UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE LEE PARKER,

          Plaintiff

v.

REGINA JENKINS-GRANT,
ERIC WISNER,
VINCENT AMALFITANO,
JOHN PURDOM,
JOEL FROST, and
ERIC HERBERT,

          Defendants.

_____/

Case No. 2:21-cv-10467
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART THE MDOC DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 20)**

I.   **RECOMMENDATION:** The Court should **GRANT IN PART** and **DENY IN PART** the MDOC Defendants' June 25, 2021 motion for partial summary judgment on the basis of exhaustion (ECF No. 20).

II.   **REPORT:**

    **A.   Background**

    Bruce Lee Parker (#593090) is currently incarcerated at the Michigan Department of Corrections (MDOC) Macomb Correctional Facility (MRF), where he is serving sentences imposed in state court on November 3, 2008 and December

15, 2008.[1]  *See* Case No. 071823-FC (Kalamazoo County), Case No. 080026-FC

(Kalamazoo County).  Since then, in addition to the instant matter, Meeks has filed

multiple cases in this Court.[2]

### B.    Instant Case

On February 19, 2021, while incarcerated at MRF, Plaintiff filed the instant,

verified complaint against six MRF officials – Resident Unit Manager (RUM)

Regina Jenkins-Grant, Corrections Officer Eric Wisner, Acting Lieutenant

Amalfitano, Sergeant John Purdom, Sergeant Joel Frost, and Inspector Eric Herbert

– concerning the alleged events of July and August 2020.  (ECF No. 1, PageID.4-5

¶¶ 21-26; *see also id*., PageID.12.)  Plaintiff claims that Defendants retaliated

against him for exercising his First Amendment rights (ECF No. 1, ¶¶ 42-43)

and/or were deliberately indifferent in violation of the Eighth Amendment (*id*., ¶¶

44-45.)  Plaintiff requests punitive damages for Defendants' "evil intent and

intentional behavior" and compensatory damages for Defendants' violation of

Plaintiff's constitutional rights.  (*Id*., PageID.12 ¶¶ (a)-(c).)

---

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited Oct. 13, 2021.

[2] *See*, *e.g.*, *Parker v. Cady* (2:13-cv-13670-NGE-PTM), *Parker v. Duncan, et al*. (2:19-cv-11176-SFC-EAS), *Parker v. Hildreth, et al*. (2:19-cv-12345-MAG-APP), *Parker v. Grygorcewicz, et al*. (2:20-cv-11107-MAG-KGA), *Parker v. Washington, et al.* (4:20-cv-11413-MFL-KGA), *Parker v. Turner, et al*. (2:20-cv-12794-VAR-RSW).  (ECF No. 1, PageID.3.)

Parker was permitted to proceed in this Court *in forma pauperis*. (ECF Nos. 2, 4.) Although the case was stayed and referred to the *Pro Se* Prisoner Early Mediation Program, on April 6, 2021, the Court entered an order granting Plaintiff's motion to exclude this case from the program. (ECF Nos. 5, 7, 8, 9.) At the Court's direction, the U.S. Marshals Service facilitated service of this lawsuit upon each of the Defendants. (ECF Nos. 10, 11.) On June 25, 2021, the six Defendants appeared via counsel. (ECF Nos. 13-18.)

### C.    Pending Motions

On May 10, 2021, Judge Michelson referred this case to me for pretrial matters. (ECF No. 12.) Currently before the Court is the MDOC Defendants' June 25, 2021 motion for partial summary judgment on the basis of exhaustion (ECF No. 20), regarding which a response and a reply have been filed (ECF Nos. 21-22). Plaintiff's September 7, 2021 emergency motion for preliminary injunction (ECF No. 23), as to which the MDOC Defendants timely filed a response on October 21, 2021 (ECF Nos. 24, 25), will be addressed under separate cover.

### D.    Discussion

#### 1.    Exhaustion

Defendants argue that Plaintiff "failed to exhaust administrative remedies on his claims." (ECF No. 20, PageID.101-111.) "No action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a).  Motions based on Section 1997e(a) are well-suited to analysis under

Fed. R. Civ. P. 56.  *See Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich.

2016) (Lawson, J.) ("The summary judgment motion is especially well suited to

pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion

generally requires resort to matters outside the pleadings, such as affidavits or

documentary evidence.") (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102,

1104 (6th Cir. 2010)).

## 2.   Grievances

The MDOC's 3-step prisoner/parolee grievance procedure is set forth in

MDOC PD 03.02.130 (effective March 18, 2019).  (ECF No. 20-2.)  Importantly,

this policy directive provides:  "[c]omplaints filed by prisoners regarding grievable

issues as defined in this policy serve to exhaust a prisoner's administrative

remedies only when filed as a grievance through all three steps of the grievance

process in compliance with this policy."  (*Id.*, ¶ C.)

Defendants have produced a copy of Plaintiff's MDOC Prisoner Step III

Grievance Report, which indicates that for the time period and location (MRF) at

issue in this case, Plaintiff pursued fourteen grievances through Step III prior to

filing his complaint on February 19, 2021.  Specifically, he initiated eight in late

July 2020 and the following six during August and September 2021:

- MRF-20-08-1622-17Z

- MRF-20-08-1693-17Z

- MRF-20-08-1694-17B

- MRF-20-08-1718-17Z

- MRF-20-09-1991-17Z

- MRF-20-09-2151-03B

(ECF No. 20-3, PageID.127-132, 176-206.) [3]

### 3.    Defendants concede that Plaintiff has exhausted his retaliation claim against Jenkins-Grant concerning the July 2020 phone restrictions.

Sgt. Loxton cited Plaintiff for a July 27, 2020 violation of MDOC PD

05.03.130 ("Prisoner Telephone Use").  The proposed disposition was sixty days

of telephone restriction (beginning 7/27/20 and ending at midnight on 9/24/20).

On July 28, 2020, Plaintiff requested a hearing.  (ECF No. 1, PageID.14.)

Resident Unit Manager (RUM) Jenkins-Grant was the Hearing Officer at the

administrative hearing.  (ECF No. 1, PageID.4 ¶ 21; *id*., PageID.13.)  Plaintiff

alleges that he met with Defendant Jenkins-Grant on August 7, 2020 and informed

---

[3] *See* MRF-20-07-1502-03E, MRF-20-07-1503-28K, MRF-20-07-1504-28K, MRF-20-07-1505-17F, MRF-20-07-1511-28I, MRF-20-07-1522-03E, MRF-20-07-1531-28I, and MRF-20-07-1532-28B.  (ECF No. 20-3, PageID.127-132.)

her that the notice of intent to conduct an administrative hearing was issued July 28, 2020, rather than on July 27, 2020, in violation of MRF Operating Procedure 05.03.130. (ECF No. 1, PageID.4 ¶ 21, 6-7 ¶ 30.) Plaintiff claims his phone PIN was disabled on July 27, 2020. (*Id*., PageID.11 ¶ 41.) Plaintiff alleges that Defendant Jenkins-Grant retaliated by stating, "Parker[,] you should have thought about that when you were filing complaints[,]" and then concluded and falsely alleged that his phone privileges were not suspended until July 28, 2020. (ECF No. 1, PageID.7 ¶ 30; *id*., PageID.13.) Defendant Jenkins-Grant's administrative hearing report indicates that Parker's phone privileges would be suspended for sixty days (7/28/20 – 9/25/20). (*Id*.) Defendants concede that MDOC Grievance MRF-20-08-1718-17z (ECF No. 20-3, PageID.181-185) exhausts Plaintiff's retaliation claim against Jenkins-Grant concerning the July 2020 phone restrictions. (ECF No. 20, PageID.110.)[4]

> **4.** **There remains a question of material fact as to whether Plaintiff has exhausted his available administrative remedies as to his retaliation claims against Wisner, Purdom and Amalfitano with respect to the August 8, 2020 misconduct ticket.**

To understand Plaintiff's claims against Wisner, Purdom and Amalfitano, the Court begins with Plaintiff's allegation that MRF Corrections Officer Wisner

---

[4] Defendants also attach a copy of MRF-20-08-1622-17Z, which has a July 28, 2020 incident date but was filed against non-Defendant Sgt. Luxton. (ECF No. 20-3, PageID.196-202.)

and MRF Sergeant Purdom "failed to render aid or assistance" to Prisoner Perry

on July 31, 2020 when he needed medical attention.  (ECF No. 1, PageID.4-6 ¶¶

22, 24, 27.)  Put another way, Plaintiff alleges that Wisner and Purdom "failed to

act and instead stood by and watched Mr. Perry suffer cardiac arrest and

ultimately die the following day."  (ECF No. 1, PageID.10 ¶ 40.)  Plaintiff claims

to have written to Governor Whitmer and Attorney General Nessel about this

incident on August 3, 2020 and to have emailed a reporter with the Detroit Free

Press about this incident on August 4, 2020.  (*Id*., PageID.6 ¶¶ 28-29.)

On August 8, 2020, Corrections Officer Wisner issued Plaintiff the allegedly

false and retaliatory misconduct for "Unauthorized Occupation of Cell or Room,"

because Wisner had "observed prisoner Wilson-Johnson #977230 [who was

assigned to cell I-71-T] step into cell 90[,]" and "[a]t no time did prisoner Parker

#593090 have staff authorization to allow prisoner Wilson-Johnson into his cell."

(ECF No. 1, PageID.7 ¶ 31; *id*., PageID.16.)  On August 9, 2020, Sgt. Purdom

reviewed the misconduct report.  (*Id*., PageID.16.)  According to Plaintiff, he met

with Purdom that day, Wisner was also present, and these Defendants made

intimidating and/or threatening comments.  (ECF No. 1, PageID.7-8 ¶ 32.)  In the

wake of these events, Plaintiff submitted two grievances:  (i) one with an August 8,

2020 incident date that alleges Wisner shows "preferential care and treatment to

white prisoners as opposed to aboriginal or Asiatic Blacks[,]" (ECF No. 20-3,

PageID.186-190 [MRF-20-08-1693-17Z]); and, (ii) another with an August 9, 2020 incident date that alleges Wisner and Purdom "collud[ed] and co[n]spir[ed] to retaliate against [Plaintiff] in response to [Plaintiff] contacting the media and internal affairs concerning their inaction and deliberate ignorance and indifference to Prisoner Daniel Perry . . . [,]" (ECF No. 20-3, PageID.203-206 [MRF-20-08-1694-17B]).

Lieutenant Amalfitano was the Hearing Officer at the hearing on this misconduct. (ECF No. 1, PageID.4 ¶ 23; *id*., PageID.17.) Plaintiff alleges that, on August 15, 2020, Lt. Amalfitano watched the video of the alleged "unauthorized occupation" incident and stated, "prisoner Wilson-Johnson stood at your cell for (3) minutes so virtually he went into your cell." (ECF No. 1, PageID.8 ¶ 33.) Plaintiff claims to have challenged this interpretation by reading the definition set forth at MDOC PD 03.03.105B – "Being in another prisoner or prisoners' cell or room, or clearly defined living area, without specific authorization from staff; being present in any cell, room, or other walled area with another prisoner or prisoners or a member or members of the public without staff authorization[,]" – but Amalfitano allegedly stated, "I don't care[,] Parker." When Plaintiff asked if he was serious, Amalfitano allegedly responded, "Yes, Parker[,] with all the grievances and complaints you file[,] do you think you'll get a fair shake with me or anyone else here at MRF?" (*Id*., PageID.8 ¶ 33.) Amalfitano found Plaintiff

guilty and sanctioned Plaintiff to two days toplock.  (*Id*., PageID.17.)  Plaintiff's

appeal was denied on August 18, 2020.  (*Id*., PageID.18.)

Although Defendants mention MRF-1693 and MRF-1694 in their review of

the facts (ECF No. 20, PageID.99-100), these grievances are not the focus of their

exhaustion argument.  Instead, perhaps recognizing that decisions made in Class I,

II or III misconduct hearings are "non-grievable" under ¶¶ J(9),(11) of MDOC PD

03.02.130, they focus on "[e]xhausting non-grievable misconduct tickets[.]"  (ECF

No. 20, PageID.107-108.)  "A prisoner aggrieved by a final decision or order of a

hearings officer shall file a motion or application for rehearing in order to exhaust

his or her administrative remedies before seeking judicial review of the final

decision or order."  Mich. Comp. Laws § 791.255(1).  *See also Ayotte v. Stemen*,

No. 15-13826, 2019 WL 2219739 (E.D. Mich. Feb. 27, 2019) (Davis, M.J.)

(regarding bench trial on exhaustion of administrative remedies), *report and*

*recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26,

2019) (Tarnow, J.) (ECF No. 20-4).  Also, the MDOC's Prisoner Discipline Policy

Directive contains provisions concerning "misconduct appeals/request for

rehearing[,]" MDOC PD 03.03.105 ¶¶ SSS-XXX (ECF No. 20-5).

In Defendants' words, "[t]o properly exhaust Parker's claims that Wisner

issued the [August 8, 2020] ticket in retaliation, that Purdom retaliated against him

in reviewing the ticket [on August 9, 2020], and that [Amalfitano] retaliated

against him in conducting the [August 15, 2020] misconduct hearing, Parker

needed to have raised these issues at the misconduct hearing and then raised these

issues in any subsequent rehearing and appeals." (ECF No. 20, PageID.109.)[5] In

support of this argument, they rely upon *Siggers v. Campbell*, 652 F.3d 681 (6th

Cir. 2011) and point out that Amalfitano's August 15, 2020 hearing report contains

no indication that Parker alleged retaliation (*see* ECF No. 1, PageID.17). (ECF

No. 20, PageID.109; ECF No. 22, PageID.245-246.) Put another way, Defendants

contend that "there is no record that Parker alleged 'retaliation' during the

misconduct hearing for the August 8, 2020, ticket, so he cannot attempt to *revive*

such a claim during his request for rehearing." (ECF No. 22, PageID.246

(emphasis added).)

   However, Defendants' reliance on *Siggers* is somewhat misplaced. True,

Siggers contested the district court's finding that "he did not complain that the

major misconduct tickets constituted *retaliation* in the hearing[,]" and the Sixth

Circuit affirmed, in part because "the retaliation complained of in the statement is

not said to be the issuance of a major misconduct ticket;" thus, "this statement does

---

[5] Plaintiff also claims that, on August 27, 2020, when he met with Inspector Hohn
via video conference, Plaintiff explained "how defendants Wisner and Purdom
failed to act . . ." and "how Defendants were targeting him daily. . . ." (ECF No.
1, PageID.10 ¶ 40.)

not establish that Siggers claimed, in the hearing, that a misconduct report was an act of retaliation." *Siggers*, 652 F.3d at 693-694.

Here, based on the evidence currently before the Court, a reasonable jury could conclude that Plaintiff raised the issue of retaliation at the August 15, 2021 hearing, *i.e.*, he was not attempting to *revive* it on August 18, 2021.  Defendants rely upon the August 15, 2020 hearing report's summary of the "[e]vidence and/or prisoner statement in addition to misconduct report[,]" which was presumably drafted *by Amalfitano*.  (ECF No. 1, PageID.17.)  It is certainly possible that something was omitted from this summary – intentionally or accidentally.  In comparison, the misconduct appeal – which was completed *by Plaintiff* and received at the Deputy Warden's Office on August 18, 2020 (just three days after the hearing) – certainly mentioned retaliation.  Specifically, Plaintiff's August 2020 misconduct appeal form alleges, *inter alia*, that Amalfitano's August 15, 2020 decision was retaliatory and that Plaintiff "informed the hearing officer that the ticket was written by C/o Wisner in retaliation . . . ."  (ECF No. 1, PageID.18.) (*See also* ECF No. 21, PageID.240-241.)  In sum, Amalfitano's and Plaintiff's versions of what issues were raised at the August 15, 2020 hearing create a question of material fact that bars summary judgment on the issue of exhaustion as to Plaintiff's retaliation claims against Wisner, Purdom and Amalfitano with respect to the August 8, 2020 misconduct ticket.

**5.     Defendants do not move for dismissal of Plaintiff's deliberate indifference claim against Wisner concerning the alleged August 2020 sexual harassment.**

Plaintiff alleges that he was sexually harassed by Wisner:  (a) on August 16, 2020, when Wisner stated, "Parker keep sucking the Sergeant and Lieutenants [sic] [expletive] and telling.  No one believes you[,]" after which Plaintiff filed Prison Rape Elimination Act (PREA) grievance MRF/2008/00003/PREA/E; and, (b) on August 24, 2020, when Wisner stated, "here comes that [expletive] Parker[,]" after which Plaintiff filed PREA grievance MRF/2008/00004/PREA/E.  (ECF No. 1, PageID.8-9 ¶¶ 34, 37.)  Plaintiff mentions the alleged sexual harassment in his August 24, 2020 mental health kite.  (ECF No. 1, PageID.22.)  Then, within Plaintiff's deliberate indifference claim, he contends that Defendant Wisner targeted him "with unwanted and unsolicited sexually inflammatory comments meant to degrade, humiliate and alarm plaintiff[,] a victim and surviv[o]r of sexual abuse . . . [,]" in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  (ECF No. 1, PageID.12 ¶ 45.)

Defendants acknowledge that Plaintiff attempts a sexual harassment claim against Wisner (ECF No. 20, PageID.109), and, as to Wisner, Defendants seem to seek dismissal only as to Plaintiff's retaliatory misconduct ticket claims (*id*., PageID.111-112).  Thus, they have not moved for dismissal of Plaintiff's

deliberate indifference claim against Wisner concerning the alleged August 2020

sexual harassment.[6]

> **6.    There remains a question of material fact as to whether Plaintiff has exhausted his available administrative remedies as to his retaliation claim against Wisner with respect to the August 20, 2020 misconduct ticket.**

Plaintiff alleges that, on August 16, 2020, he "was sexually harassed by

defendant Wisner . . . [,]" and Plaintiff filed a PREA grievance.  (ECF No. 1,

PageID.8-9 ¶ 34 [MRF/2008/00003/PREA/E].)  On August 20, 2020, Defendant

Wisner issued Plaintiff a Class II misconduct report for Interference with the

Administration of Rules, because Plaintiff was allegedly out of his cell without

permission while on toplock.  (ECF No. 1, PageID.19.)  On August 21, 2020,

Plaintiff signed the misconduct report next to a waiver, which reads:  "I understand

I have a right to a hearing.  I waive my right to a hearing and plead guilty to all

charges.  I also waive my right to appeal and accept the sanctions imposed."  (*Id*.,

PageID.19.)  Sgt. Frost appears to have noted that Plaintiff "accepted 2 LOP [loss

of privileges] days[.]"  (*Id*.)  Yet, a hearing investigator's August 24, 2020

signature – which appears below notes that Plaintiff's two days loss of privileges

---

[6] Indeed, the current version of MDOC PD 03.03.140 ("SEXUAL ABUSE AND SEXUAL HARASSMENT OF PRISONERS – PRISON RAPE ELIMINATION ACT (PREA)"), which became effective on April 5, 2021 (but superseded the version effective April 24, 2017), outlines "reporting prohibited conduct" at Paragraphs TT-XX.  Perhaps Defendants acknowledge that Plaintiff may have exhausted his available administrative remedies by filing PREA grievances.

were to begin on August 27, 2020 and end on August 29, 2020 – suggests that

some type of review was conducted.  (*Id*.)  And Plaintiff filed an appeal, which

was received by the Deputy Warden's Office on August 31, 2020 and which

stated:

> Appellant appeals based on his due process being violated by Sgt.
> Frost in retaliation [for] appellant's numerous complaints and
> grievances against his supervisors in violation of P.D.
> 03.03.105(WWW)(1)(2)(3).  Appellant submits that he submitted to
> the acting hearing officer Sgt. Frost that the misconduct was written in
> retaliation by C/O Wisner not because I violated any rule as I was
> authorized by C/O Terry to get water to take my medication.  Sgt.
> Frost stated "he didn't care and that he would get C/O Terry to change
> her story and say she never gave me authorization.  I requested a
> hearing but was threatened by Sgt. Frost with segregation an[d]
> assault on officer[.]  In retaliation Sgt. Frost gave me 2 d[a]ys [loss of
> privileges].

(ECF No. 1, PageID.21.)  A deputy warden denied the appeal on September 4,

2020, noting in part that Plaintiff "waived [his] right to a hearing and appeal on

[August 21, 2020] at review."  (*Id*.)

In his complaint, Plaintiff claims that Wisner issued the false misconduct in

retaliation.  (*Id*., PageID.9 ¶¶ 35-36.)  Yet, the parties are at odds as to whether this

claim is exhausted.  Defendants contend that Plaintiff did not pursue a grievance

"against Wisner relating to the August 20, 2020, misconduct ticket," which

Defendants contend Plaintiff was required to do, because there was no resulting

misconduct hearing.  (ECF No. 20, PageID.110; ECF No. 22, PageID.246.)

Defendants also claim that Plaintiff's grievance records show he "did not pursue such a grievance[.]"  (ECF No. 22, PageID.246; ECF No. 20-3.)

The evidence currently before the Court presents a question of material fact as to the willingness of Plaintiff's August 21, 2020 waiver, which question has an effect upon whether Plaintiff has exhausted his available administrative remedies as to his retaliation claim against Wisner with respect to the August 20, 2020 misconduct ticket.  Defendants contend that there was no resulting misconduct hearing, presumably relying upon Plaintiff's August 21, 2020 signature under "Waiver of Class II or III Hearing" on Sgt. Frost's misconduct report (ECF No. 20, PageID.110), although – as noted above - it seems that some type of review may have been conducted on August 24, 2020.  On the other hand, Plaintiff contends that he exhausted the misconduct by his appeal (ECF No. 21, PageID.241), and Defendants' reply glosses over this point by simply reiterating that Plaintiff pleaded guilty on August 21, 2020 to the August 20, 2020 misconduct ticket; thus, a hearing was not held, and Plaintiff was required to exhaust through the MDOC's grievance process.  (ECF No. 22, PageID.245-246.)  With no argument from Defendants regarding the willingness of Plaintiff's August 21, 2020 waiver, and because some type of review appears to have occurred on August 24, 2020, there is a question of material fact that bars summary judgment on the issue of exhaustion.

**7.     Defendants do not move for dismissal of Plaintiff's retaliation claim against Defendant Frost concerning the alleged events of August 21, 2020.**

The Court disagrees with Defendants' description of Joel Frost as "not one of the MDOC Defendants."  (ECF No. 20, PageID.98; *see also id.*, PageID.109.) Sgt. Frost is named in the caption of the complaint, listed as one of the parties, expressly mentioned within the alleged events of August 21, 2020, and mentioned within the retaliation cause of action.  (ECF No. 1, PageID.1, 5 ¶ 25, 9 ¶ 36, 11 ¶ 43.)  Indeed, Sgt. Frost signed Plaintiff's Interference with the Administration of Rules misconduct report on August 21, 2020.  (ECF No. 1, PageID.19.) Presumably as a result of this misunderstanding, Defendants' own summary of Plaintiff's claims against the MDOC Defendants omits mention of Defendant Frost.  (ECF No. 20, PageID.109.)  Thus, Defendants do not move for dismissal of Plaintiff's claims against Frost.

**8.     Even if Plaintiff intended a failure to protect/deliberate indifference claim against Jenkins-Grant concerning the events of August 24, 2020, he does not dispute that such a claim is unexhausted.**

A point of clarification is necessary with respect to Plaintiff's claims against Jenkins-Grant, who is also mentioned with respect to the alleged events of August 24, 2020.  Defendants interpret Plaintiff's complaint as alleging that Jenkins-Grant failed to protect by not separating Parker from Wisner pending the PREA investigation.  (ECF No. 20, PageID.98.)  However, I interpret this particular

paragraph as alleging "defendant *Herbert*'s failure to protect plaintiff *in retaliation [for] plaintiff's grievances filed against him and pending civil suit*."  (ECF No. 1, PageID.10 ¶ 38 (emphasis added).)  Thus, although Plaintiff lists Jenkins-Grant as a defendant against whom he brings his deliberate indifference claim, it seems that Plaintiff's claims of "failing to protect and separate plaintiff from a known predator officer . . . [,]" and "failing to protect plaintiff from his abuser even after knowledge of the abuser having contact with plaintiff[,]" may just be intended for Defendant Herbert.  (*See id*., PageID.11-12 ¶¶ 43, 45.)[7]

Even if Plaintiff intended to bring a failure to protect/deliberate indifference claim against Defendant Jenkins-Grant, Defendants argue that Plaintiff has not exhausted his claim "against Jenkins-Grant relating to her alleged failure to protect Parker from Wisner's sexual harassment," because he "did not pursue any grievances relating to those claims[.]"  (ECF No. 20, PageID.110-111.)  Although "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints[,]" *Jones v. Bock*, 549 U.S. 199, 216 (2007), Defendants correctly note that Plaintiff's response brief is silent on this issue.  (ECF No. 21, PageID.240-241; ECF No. 22,

---

[7] Moreover, while Plaintiff's deliberate indifference claim collectively mentions "Jenkins-Grant, Wisner, and Herbert" with respect to the failure to protect claim, I do not interpret such claim as brought against Wisner, as he seems to be the alleged "abuser."  (ECF No. 1, PageID.11-12 ¶ 45.)

PageID.246.)  Therefore, I presume that either Plaintiff:  (a) did not intend to claim that Jenkins-Grant failed to protect; or, (b) does not oppose the conclusion that he has failed to exhaust such a claim.

>**9.    Defendants concede that Plaintiff has exhausted his failure to protect/deliberate indifference claim against Herbert concerning the alleged events of August 24, 2020.**

Plaintiff identifies Eric Herbert as an MRF Inspector.  (ECF No. 1, PageID.5 ¶ 26.)  Plaintiff alleges that, on August 24, 2020, he informed a prison counselor of Defendant Wisner's actions, Plaintiff's already ongoing PREA investigations, and that MDOC PD 03.03.140 and 28 C.F.R. § 115.66 required Defendant Wisner to be separated from Plaintiff pending investigation.  (*Id*., PageID.10 ¶ 38.)  Defendant Herbert allegedly told the counselor, "C/O Wisner can have contact with Parker, sexual harassment is not a PREA issue[,]" after which Plaintiff filed a grievance against Herbert – presumably MRF-20-09-1991-17z.  (*Id*.; ECF No. 20-3, PageID.191-195.)  In fact, Plaintiff's August 24, 2020 MDOC Kite specifically mentioned Inspector Herbert's alleged "inaction."  (ECF No. 1, PageID.10 ¶ 39; id., PageID.22.)  According to Plaintiff, Defendant Herbert failed to protect him "in retaliation [for] . . . grievances filed against [Wisner] and [the] pending civil suit."  (ECF No. 1, PageID.10 ¶ 38.)  Defendants concede that MDOC Grievance MRF-20-09-1991-17z (ECF No. 20-3, PageID.191-195) exhausts Plaintiff's failure

to protect claim/deliberate indifference against Defendant Herbert.  (ECF No. 20, PageID.110.)

### E.    Conclusion

Defendants seek dismissal of "the unexhausted claims—i.e., the failure-to-protect claim against Jenkins-Grant and the retaliatory misconduct ticket claims against Wisner, Purdom, and [Amalfitano]."  (ECF No. 20, PageID.111.)  As described in further detail above, Plaintiff does not appear to oppose dismissal of the failure to protect claim against Jenkins-Grant concerning the events of August 24, 2020 (assuming Plaintiff even intended such a claim).  However, there are genuine issues of material fact as to whether Plaintiff exhausted his retaliation claims against:  (1) Wisner, Purdom and Amalfitano concerning the August 8, 2020 misconduct ticket; and, (2) Wisner as to the August 20, 2020 misconduct ticket.

Accordingly, the Court should **GRANT IN PART** and **DENY IN PART** Defendants' motion for partial summary judgment on the basis of exhaustion (ECF No. 20).  If the Court agrees with the foregoing recommendations, then any intended failure to protect/deliberate indifference claim against Jenkins-Grant concerning the events of August 24, 2020 should be dismissed but the following claims survive:  **(1)** Plaintiff's retaliation claim against Jenkins-Grant concerning the July 2020 phone restrictions; **(2)** Plaintiff's retaliation claims against Wisner,

Purdom and Amalfitano with respect to the August 8, 2020 misconduct ticket; **(3)** Plaintiff's deliberate indifference claim against Wisner concerning the alleged August 2020 sexual harassment; **(4)** Plaintiff's retaliation claim against Wisner as to the August 20, 2020 misconduct ticket; **(5)** Plaintiff's retaliation claim against Defendant Frost concerning the alleged events of August 21, 2020; and, **(6)** Plaintiff's failure to protect/deliberate indifference claim against Herbert concerning the alleged events of August 24, 2020.

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within fourteen days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  October 29, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE